Don Springmeyer, Esq.
Nevada State Bar No. 1021
Daniel Bravo, Esq.
Nevada Bar No. 13078
**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120-2234
Tel.: (702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
dbravo@wrslawyers.com

Jason J. Thompson *(Pro hac vice to be submitted)*
Rod M. Johnston *(Pro hac vice to be submitted)*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, MI 48076
Tel.: (248) 355-0300
jthompson@sommerspc.com
rjohnston@sommerspc.com

*Counsel for Plaintiffs and Proposed Class*
*and Collective Members*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ALFRED DARNELL GREENE and CHRISTOPHER SUASAENG, individually, and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' COLLECTIVE AND CLASS ACTION COMPLAINT** |
| OMNI LIMOUSINE, INC., | |
| Defendant. | |

Plaintiffs ALFRED DARNELL GREENE and CHRISTOPHER SUASAENG, by and through their undersigned attorneys, hereby bring this Collective/Class Action Complaint against Defendant OMNI LIMOUSINE, INC., and state as follows:

## **INTRODUCTION**

1.     This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs

ALFRED DARNELL GREENE and CHRISTOPHER SUASAENG ("Plaintiffs"), on behalf of all similarly situated persons employed by Defendant OMNI LIMOUSINE, INC. ("Omni" or "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiffs also seek to bring their claims for violations of the Nevada Revised Statutes ("NRS") § 608.005, *et seq.*, and Nevada common and constitutional law as a state-wide class action pursuant to Fed. R. Civ. P. 23.

2.    Plaintiffs, and those similarly situated, were subjected to Defendant's policy and practice of failing to pay Plaintiffs a minimum wage and overtime at a rate of one and one-half times their regular rate for hours worked in excess of 40 hours during a workweek.

3.    Specifically, Plaintiffs complain that Defendant failed to compensate them for compensable pre-, mid-, and post-shift work; failed to pay minimum, regular and overtime wages that Plaintiffs were entitled to under applicable federal and state laws; and unlawfully deducted compensable time from Plaintiffs' earned wages.

4.    The individuals that Plaintiffs seek to represent in this action are current and former Chauffeur/Limousine drivers that worked for Defendant and are similarly situated to each other in terms of their common experience of Defendant's violations of federal and state law.

5.    Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION AND VENUE

6.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

7.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any

employer . . . in any Federal or State court of competent jurisdiction."

8.      Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship from Defendant.

9.      Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

10.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

11.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Nevada, employs individuals within the state of Nevada, is registered with the Nevada Secretary of State, and maintains its principal place of business in the state of Nevada.

13.     Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privileges of conducting activities in the state of Nevada and established minimum contacts sufficient to confer jurisdiction over Defendant, and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

14.     Venue is proper in this district because Defendant employs Chauffeurs/Limousine drivers in this district, and a substantial portion of the events forming the basis of this suit

COLLECTIVE AND CLASS ACTION COMPLAINT

1  (including implementation of the illegal pay practices alleged in this litigation) occurred in this
2  district.

### **PARTIES**

3

4      15.    Plaintiff ALFRED DARNELL GREENE ("Plaintiff Greene") is a natural person
5  who is and was a resident of the State of Nevada at all times relevant herein and has been
6  employed by the Defendant named herein since December 2017. Plaintiff Greene is compensated
7  through the payment of an hourly wage equal to $8.25 per hour. (*See* **Exhibit 1**, Greene Pay
8  Stub). Plaintiff Greene signed a consent form to join this lawsuit. (*See* **Exhibit 2**, Greene
9  Consent to Join).

10     16.    Plaintiff CHRISTOPHER SUASAENG ("Plaintiff Suasaeng") is a natural person
11 who is and was a resident of the State of Nevada at all times relevant herein and has been
12 employed by the Defendant named herein since November 2017. Plaintiff Suasaeng is
13 compensated through the payment of an hourly wage equal to $8.25 per hour. (*See* **Exhibit 3**,
14 Suasaeng Pay Stub). Plaintiff Suasaeng signed a consent form to join this lawsuit. (*See*
15 **Exhibit 4**, Suasaeng Consent to Join).

16     17.    Defendant OMNI LIMOUSINE, INC. ("Defendant" or "Omni") is a Nevada
17 corporation (Entity Number: C12215-2001) with a principal place of business at 1401 Helm
18 Drive, Las Vegas, Nevada 89119. Omni can be served via its registered agent, Russell S. Garrett,
19 at 10785 West Twain Avenue, Suite 100, Las Vegas, Nevada 89135.

20     18.    At all times relevant herein, Defendant was an employer under NRS 608.011 for
21 all employees in Nevada. Defendant is an employer under the provisions of NRS Chapter 608, is
22 certified by the Nevada Transportation Authority to be engaged as a charter limousine service,
23 with an active certificate #1084.5, and is engaged in commerce for the purposes of the FLSA, 29
24 U.S.C. § 201 *et seq.* and not subject to the motor carrier act exemption to the FLSA, 29 U.S.C. §
25 213(b). *See, e.g.*, *Lucas v. Bell Trans*, 773 F. Supp. 2d 930, 935-39 (D. Nev. 2011).

26     19.    For labor relations purposes, Defendant constitutes the employer of Plaintiffs and
27 all Plaintiff class members (hereinafter referred to as "Class Members").

28

## FACTUAL ALLEGATIONS

**A.    Plaintiffs are nonexempt hourly employees subject to the minimum wage and overtime compensation provisions of the FLSA**

20.    Defendant is in the business of providing limousine services. (*See generally* https://www.omnilimo.com/ (last visited on August 8, 2018)).

21.    At all times relevant herein, Defendant employed Plaintiffs as hourly paid (non-exempt) Chauffeur/Limousine drivers.

22.    This is a collective and class action brought on behalf of all persons who worked for Defendant as drivers of limousines and excluding all persons whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935 (such employees who regularly transport passengers interstate or to the airport on a "through ticket" interstate).

23.    Because Plaintiffs and Class Members do not drive passengers with "through tickets" from airlines for travel interstate, they are not exempt from overtime under Section 13(b)(1) of the FLSA. *See* Section 24c04 of the United States Department of Labor ("DOL") Field Operations Handbook, which states with original emphasis,

> Drivers of buses/shuttle services/limousines carrying interstate passengers and their baggage to and from transportation terminals within a single state are not engaged in interstate transportation of passengers and property within the meaning of the Motor Carrier Act, unless the transportation is part of a through-ticketing or other common arrangement between the motor carrier and the air carrier. Therefore, section 13(b)(1) will *not* apply except in the case of a through-ticketing or other common arrangement for continuous passage or interchange between the motor carrier and the air carrier.

(https://www.dol.gov/whd/FOH/FOH_Ch24.pdf (last visited on August 8, 2018)).

24.    Plaintiffs and Class Members were employed by Defendant as limousine drivers who operate either traditional or livery limousines, as the terms are defined in either Nevada Administrative Code ("NAC") 706.080 or NAC 706.124. Under NAC 706.080, a "livery limousine" means a motor vehicle engaged in the general transportation of persons for compensation that was originally manufactured as having a capacity of 9 or more persons but

less than 16 persons, including the driver; or a capacity of 16 or more persons, including the driver, but is currently configured with a capacity of less than 16 persons, including the driver. Under NAC 706.124, a "'[t]raditional limousine' means a motor vehicle engaged in the general transportation of persons for compensation that was originally manufactured as having a capacity of less than nine persons, including the driver."

25.    Because the limousines are subject to the above cited Nevada regulations, the employees who drive them must be subject to the minimum wage and overtime provisions of the FLSA pursuant to Section 306(a) and (c) of the SAFETEA–LU Technical Corrections Act, Pub. L. No. 110–244, 122 Stat. 1572 (2008), which states: "Beginning on the date of enactment of this Act, section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) shall apply to a covered employee notwithstanding section 13(b)(1) of that Act (29 U.S.C. 213(b)(1))." Under the SAFETEA–LU Technical Corrections Act, a covered employee includes anyone who drives a vehicle of 10,000 pounds or less. Employees performing duties *exclusively* on vehicles designed or used to transport *more* than eight passengers (including the driver) for compensation were excluded from the definition of "covered employee." Since Plaintiffs and Class Members spend a significant majority of their time operating vehicles designed or used to transport eight passengers or less (including the driver), they are "covered employees" entitled to the FLSA's overtime and minimum wage protections.

26.    While taxicab drivers are exempt from the minimum wage and overtime compensation provisions of the FLSA, limousine drivers are not. *See* April 17, 1998 Opinion Letter of the DOL's Wage and Hour Division reported at 1998 WL 852774 and attached hereto as **Exhibit 5**; Section 24h03 of the DOL's Field Operations Handbook; *Powell v. Carey Int'l, Inc.* 490 F.Supp. 2d 1202, 1213 (S.D. Fla. 2006) (Defendants are not exempt as taxicab operators when they have contract arrangements with local hotels, corporate clients, and destination management companies, and utilize large cars that are not traditionally recognized as taxicabs). Upon information and belief, none of the vehicles driven by Defendant's limousine drivers contained meters, nor are they licensed as taxicabs.

27.     Under the FLSA, the "regular rate" at which an employee must be paid includes "all remuneration for employment paid to, or on behalf of, the employee," 29 U.S.C. § 207(e). This general rule has exceptions, none of which is relevant here. *See* § 207(e)(1)-(8).

28.     Defendant pays its limousine drivers an hourly wage of $8.25 per hour, plus a nondiscretionary gratuity or service charge borne by the client and generally equal to 20% of the fare. Because federal regulations consider these payouts to be wages rather than tips, mandatory gratuities or service charges must be counted toward an employee's regular rate of pay and therefore must be factored into the overtime rate calculation. *See* 29 CFR 531.55; DOL Wage & Hour Opinion Letter 2005-21.

**B.     Pre-, Mid- and Post-Shift Off-the-Clock Work**

29.     As noted immediately above, Defendant pays its limousine drivers an hourly wage of $8.25 per hour. However, drivers are only paid the hourly wage for time spent driving the client. Plaintiffs and all other limousine drivers are not paid any wages at all for the time spent completing required work activities prior to the actual pickup of the client, including retrieving paperwork and trip sheets, collecting radios, keys and other work instruments, inspecting the vehicle for damage prior to leaving the yard, purchasing and transferring supplies to the vehicles (including but not limited to items such as ice, water, newspapers, tissues, and snacks), making sure the vehicle is fueled and clean, driving to the pickup location, and waiting for the actual fare. These work activities take approximately one hour or more prior to the pickup of the first client. In addition, Plaintiffs were not reimbursed for the ice, water, or other items for which Defendant required drivers to stock the vehicles.

30.     Likewise, throughout the day, Plaintiffs are not paid any wages at all for remaining on call or for completing required work activities in between fares, including waiting for or driving to the next fare, cleaning and preparing the vehicle and, at times, switching out vehicles from the yard (hereinafter collectively referred to as "mid-shift gap time"). Plaintiffs spend approximately two to three hours each workday on these mid-shift gap time activities but do not receive *any* compensation for the same.

31.     Defendant used the electronic timekeeping system "PayClock" to track Plaintiffs' hours worked for purposes of compensation. PayClock automatically logs Defendant's drivers into the timekeeping system when they are driving a client and automatically logs them out when they are engaged in mid-shift gap time activities. Thus, the amount of uncompensated mid-shift gap time can be easily calculated by reviewing the drivers' timesheets. (*See, e.g.*, **Exhibit 6**, Suasaeng Timesheet). The Suasaeng Timesheet shows that on April 15, 2018, Plaintiff Suasaeng clocked in at 10:45 AM and clocked out at 9:18 PM. Thus, Plaintiff Suasaeng worked a 10 ½-hour shift (not including any pre- or post-shift off-the-clock work). However, due to mid-shift gap time, Plaintiff Suasaeng was credited with only six hours and 17 minutes of actual work. (*Id.*). A closer look at the  Suasaeng Timesheet shows that he was clocked out by Defendant from 2:02 PM to 3:38 PM, from 4:28 PM to 5:28 PM, and from 6:28 PM to 8:18 PM. This represents Plaintiff Suasaeng's uncompensated mid-shift gap time. Altogether, Plaintiff Suasaeng spent four hours and 16 minutes performing unpaid mid-shift gap time work on April 15, 2018. (*Id.*).

32.     Additionally, at the end of Plaintiffs' and all other limousine drivers' workday, work tasks including verifying trip sheets, completing paperwork, and cleaning and inspecting the vehicle must also be completed after the drop off of the last client, amounting to another approximate hour of unpaid work time.

33.     Because Defendant pays Plaintiffs and all other Class Members an hourly wage only for drive time, Plaintiffs and all limousine drivers who are required to be on-call (i.e., waiting for rides) and/or performing other work related tasks (e.g. washing, cleaning, stocking, and servicing the vehicles) did not receive any compensation at all, let alone a minimum wage, for all hours engaged in work activities.

**C.     Lack of Overtime Pay**

34.     Defendant regularly requires Plaintiffs and all other limousine drivers to work more than 40 hours in a workweek but does not pay its drivers any overtime compensation. (*See, e.g.*, **Exhibit 3**, Suasaeng Pay Stub). The Suasaeng Pay Stub shows that Plaintiff Suasaeng

worked 104.95 hours (including 24.95 overtime hours) during the 05/19/2018-06/01/2018 pay period but was paid a straight hourly rate ($8.25) for all hours worked.

35.     In addition to straight time wages equaling $865.84, Plaintiff Suasaeng was paid $856.80 in gratuities during the pay period. (*Id.*). These gratuities must be counted toward his regular rate of pay and must be factored into his overtime rate calculation. Thus, Plaintiff Suasaeng's hourly rate during the pay period is equal to $16.41; his overtime rate is $24.62; and his overtime premium is $8.21.

36.     24.95 hours of unpaid overtime at an overtime premium rate of $8.21 per hour constitutes $204.84 of unpaid overtime premiums owed to Plaintiff Suasaeng for the overtime work he performed during the 05/19/2018-06/01/2018 pay period, not including any off-the-clock work he was required to perform. *See* 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."). With liquidated damages, Defendant owes Plaintiff Suasaeng, at minimum, $409.68 in uncompensated overtime for the pay period. *See* 29 U.S.C. § 216(b) ("Any employer who [fails to pay overtime] shall be liable to the employee or employees affected in the amount of their … unpaid overtime compensation … and in an additional equal amount as liquidated damages.").

**D.     Unlawful Deductions**

37.     In addition to the above-mentioned off-the-clock and overtime violations, the evidence shows that Defendant unlawfully withheld and/or made arbitrary deductions from Plaintiffs' earned wages. (*See, e.g.*, **Exhibit 7**, Suasaeng Timesheet #2). Suasaeng Timesheet #2 *plainly* shows that Plaintiff Suasaeng was clocked in for 96 ½ hours during the 06/02/2018-06/15/2018 pay period. However, his corresponding pay stub shows that he was paid for only 65.90 hours of work. (*See* **Exhibit 8**, Suasaeng Pay Stub #2). Thus, Defendant inexplicably withheld/deducted no less than 30 hours of earned wages from Plaintiff Suasaeng for the 06/02/2018-06/15/2018 pay period. Defendant's conduct in this regard constitutes wage theft,

1  fraud and conversion; and Defendant was unjustly enriched in an amount equal to the value of

2  the unpaid work.

3      38.    The policies and practices of Defendant at all relevant times have been

4  substantially similar, if not identical, for all limousine drivers it employs.

5  <u>**COLLECTIVE AND CLASS ACTION ALLEGATIONS**</u>

6      39.    Plaintiffs re-allege and incorporate by reference all the paragraphs above in this

7  Complaint as though fully set forth herein.

8      40.    Plaintiffs bring this action on behalf of themselves and all other similarly situated

9  and typical employees as both a collective action under the FLSA and a Fed. R. Civ. P. 23 class

10 action under Nevada law.

11     41.    Pursuant to the decision of the Ninth Circuit Court of Appeals in *Busk*, 713 F.3d

12 at 528, a FLSA collective action and a state law class action can peacefully coexist in the same

13 federal lawsuit, even though the state law class action would use an opt-out mechanism while the

14 FLSA collective action would use an opt-in mechanism.

15     42.    The proposed FLSA class is defined as follows:

16     *All Chauffeurs/Limousine Drivers who work or worked for Defendant at any time*
       *during the period of three years prior to the filing of this complaint to the date of*
17     *judgment after trial.*

18 (Hereinafter referred to as the proposed "Collective").

19     43.    The proposed Rule 23 Class is defined as follows:

20     *All Chauffeurs/Limousine Drivers who work or worked for Defendant during the*
       *applicable statute of limitations who were not properly compensated under*
21     *applicable Nevada law.*

22 (Hereinafter referred to as the "Rule 23 Nevada Class").

23     44.    With regard to the conditional certification mechanism under the FLSA, Plaintiffs

24 are similarly situated to those that they seek to represent for the following reasons, among others:

25     a.     Defendant employed Plaintiffs as hourly employees who did not receive pay for

26 all hours that Defendant suffered or permitted them to work, and did not receive overtime

27 premium pay of one and one-half their regular rate of pay for all hours worked in excess of 40

28

hours in a workweek.

b.    Plaintiffs' situation is similar to those they seek to represent because Defendant failed to pay Plaintiffs and all other Collective members for all time they were required to work, including time spent performing off-the-clock activities, pursuant to a uniform policy, plan and/or practice.

c.    Common questions of fact and/or law exist regarding whether the time spent by Plaintiffs and all other Collective members engaging in off-the-clock activities is compensable under federal law and whether Defendant failed to pay them one and one-half times their regular rate for all hours worked in excess of 40 hours in a workweek.

d.    Upon information and belief, Defendant employs, and has employed, in excess of 70 Collective members within the applicable statute of limitations.

e.    Named Plaintiffs have filed or will file their consents to sue with the Court. Plaintiffs will seek conditional certification so that all Collective members can receive official court notice of the pendency of this action. *See, e.g.*, *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

f.    Defendant knew or should have known its policies alleged herein were unlawful and that it owes employees this money, and has willfully failed to pay its employees properly.

45.    Rule 23 Class treatment for all non-FLSA claims alleged in this complaint is appropriate in this case for the following reasons:

a.    The Class is Sufficiently Numerous: Upon information and belief, Defendant employs, and has employed, in excess of 70 Class Members within the applicable statute of limitations.

b.    Common Questions of Law and Fact Exist: Common questions of law and fact exist and predominate as to Plaintiffs and Class Members, including, without limitation:

1)    Whether Defendant's policy of not paying Plaintiffs and Class Members for all hours worked violates the minimum wage provision of the Nevada Constitution.

2)    Whether Defendant paid former employees all their wages due and owing

at the time of their termination.

c.    <u>Plaintiffs' Claims are Typical to Those of Fellow Class Members</u>: Plaintiffs and all Class Members were not paid for all hours worked. Because of this pay scheme, Plaintiffs and all other Class Members were compensated at an hourly rate less than the applicable minimum wage. In addition, Defendant did not timely remit all wages due and owing to Plaintiffs and Class Members who are former employees upon their termination.

d.    <u>Plaintiffs are Adequate Representatives of the Class</u>: Plaintiffs will fairly and adequately represent the interests of Class Members because Plaintiffs are members of the Class, they have common issues of law and fact with all members of the class, and their claims are typical to other Class Members.

e.    <u>A Class Action is Superior</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the expenses and burden of individualized litigation would make it difficult or impossible for individual Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

**FIRST CAUSE OF ACTION**
**(Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207)**
**(On Behalf of the FLSA Collective)**

46.    Plaintiffs re-allege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

47.    29 U.S.C. § 207(a)(1) provides as follows: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty

hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

48.     Plaintiffs and the Collective members were employees covered by the FLSA and entitled to the overtime protections set forth in 29 U.S.C. § 207(a).

49.     Plaintiffs and the Collective members regularly worked for Defendant in excess of 40 hours per week.

50.     Defendant willfully failed to compensate Plaintiffs and the Collective members at one and one-half times their regular hourly rate of pay for time worked in excess of 40 hours in any week.

51.     Plaintiffs and the Collective members are entitled to payment of overtime in an amount to be determined at trial, in accordance with 29 U.S.C. § 216(b).

52.     Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful and unfair.

53.     Wherefore, Plaintiffs demand for themselves and for all others similarly situated, that Defendant pay Plaintiffs and the Collective members one and one-half times their regular hourly rate of pay for all hours worked in excess of 40 hours a week during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

**<u>SECOND CAUSE OF ACTION</u>**
**(Failure to Pay Wages for All Hours Worked in Violation of NRS 608.140 and 608.016)**
**(On Behalf of the Rule 23 Nevada Class)**

54.     Plaintiffs re-allege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

55.     NRS 608.140 provides that an employee has a private right of action for unpaid wages: "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment, and shall

1     establish by decision of the court or verdict of the jury that the amount for which he or she has

2     brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit

3     was brought, for a sum not to exceed the amount so found due, the court before which the case

4     shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount

5     found due for wages and penalties, to be taxed as costs of suit." On or about August 27, 2018

6     Plaintiffs made demand for unpaid wages upon Defendant pursuant to NRS 608.140 but

7     satisfactory payment was not received.

8        56.    NRS 608.016 states that, "an employer shall pay to the employee wages for each

9     hour the employee works." Hours worked means anytime the employer exercises "control or

10    custody" over an employee. *See* NRS 608.011 (defining an "employer" as "every person having

11    control or custody … of any employee."). Pursuant to NAC 608.115(1), hours worked includes

12    "all time worked by the employee at the direction of the employer, including time worked by the

13    employee that is outside the scheduled hours of work of the employee."

14       57.    By failing to compensate Plaintiffs and Class Members for the time spent engaged

15    in work activities described above, Defendant also failed to pay Plaintiffs and Class Members for

16    all hours worked in violation of NRS 608.140 and 608.016.

17       58.    Plaintiffs and Class Members should have received their regular rate of pay, or the

18    minimum wage, whichever is higher, in a sum according to proof for the hours worked, but not

19    compensated, during the Class Period. Defendant therefore owes Plaintiffs and Class Members

20    regular rate wages or minimum wages, whichever is higher, as well as liquidated damages in

21    an equal amount to the wages owed, and has failed and refused, and continues to fail and refuse,

22    to pay Plaintiffs and Class Members the amounts owed.

23       59.    Although the statute of limitations for minimum wage violations is two years,

24    there is no express statute of limitations for violations of NRS 608.140 and 608.016 and,

25    therefore, the three-year statute contained in NRS 11.190(3) for statutory violations applies.

26       60.    Wherefore, Plaintiffs demand for themselves and for Class Members that

27    Defendant pays Plaintiffs and Class Members their regular hourly rate of pay for all hours

28

worked for three years from the date of filing this complaint until the date of judgment in this action together with attorneys' fees, costs, and interest as provided by law.

### THIRD CAUSE OF ACTION
**(Failure to Pay Minimum Wages in Violation of the Nevada Constitution)**
**(On Behalf of the Rule 23 Nevada Class)**

61.    Plaintiffs re-allege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

62.    Article 15 Section 16 of the Nevada Constitution sets forth the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of this section may not be waived by agreement between an individual employee and an employer…. An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

63.    By failing to compensate Plaintiffs and Class Members for the time spent engaging in work activities identified above, Defendant failed to pay Plaintiffs and Class Members minimum wages for all hours worked in violation of the Nevada Constitution.

64.    Wherefore, Plaintiffs demand for themselves and for all Class Members payment by Defendant at their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all hours worked during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

### FOURTH CAUSE OF ACTION
**(Failure to Timely Pay All Wages Due and Owing Upon Termination/Resignation Pursuant to NRS 608.140 and 608.020-608.050)**
**(On Behalf of the Rule 23 Nevada Class)**

65.    Plaintiffs re-allege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

66.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

67.     NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

68.     NRS 608.040(1)(a-b), in relevant part, states that "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30 days, whichever is less."

69.     NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

70.     By failing to pay Plaintiffs and Class Members who are former employees of Defendant all their wages owed for all hours worked in violation of NRS 608.140 and 608.016, Defendant has failed to timely remit all wages due and owing to Plaintiffs and Class Members who are former employees.

71.     Despite demand, Defendant willfully refuses and continues to refuse to pay Plaintiffs and Class Members who are former employees all the wages that were due and owing upon the termination of their employment.

72.     Because there is no express statute of limitations for violations of NRS 608.020-050 and NRS 608.140, the three-year statute contained in NRS 11.190(3) for statutory violations applies.

73.     Wherefore, Plaintiffs and Class Members demand 30 days wages under NRS 608.040, NRS 608.140, and NRS 608.050; together with attorneys' fees, costs, and interest as

provided by law.

## FIFTH CAUSE OF ACTION
### (Unlawful Wage Deductions Pursuant to NRS 608.100 and 608.110)
### (On Behalf of the Rule 23 Nevada Class)

74.    Plaintiffs re-allege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

75.    "It is unlawful for any employer to: (a) Pay a lower wage, salary or compensation to an employee than the amount agreed upon through a collective bargaining agreement, if any; (b) Pay a lower wage, salary or compensation to an employee than the amount that the employer is required to pay to the employee by virtue of any statute or regulation or by contract between the employer and the employee; or (c) Pay a lower wage, salary or compensation to an employee than the amount earned by the employee when the work was performed." NRS 608.100(1).

76.    "It is unlawful for any employer to require an employee to rebate, refund or return any part of the wage, salary or compensation earned by and paid to the employee." N.R.S. § 608.100(2).

77.    "It is unlawful for any employer who has the legal authority to decrease the wage, salary or compensation of an employee to implement such a decrease unless: (a) Not less than 7 days before the employee performs any work at the decreased wage, salary or compensation, the employer provides the employee with written notice of the decrease; or (b) The employer complies with the requirements relating to the decrease that are imposed on the employer pursuant to the provisions of any collective bargaining agreement or any contract between the employer and the employee." NRS 608.100(3).

78.    "At the time of payment of wages or compensation, the employer shall furnish the employee with an itemized list showing the respective deductions made from the total amount of wages or compensation." NRS 608.110(2).

79.    Defendant violated NRS 608.100 and 608.110 by paying a lower wage, salary or compensation to its employees than the amounts earned by its employees when the work was performed and/or paying a lower wage, salary or compensation to its employee than the amount

that Defendant was required to pay to its employees by virtue of any statute or regulation or by contract between Defendant and its employees. Nor did Defendant furnish its employees with an itemized list showing the respective deductions made from the total amount of wages or compensation, as required by NRS 608.110(2).

80.    Defendant's actions discussed above were willfully oppressive, fraudulent and malicious, entitling Plaintiffs and the Class Members to punitive damages.

81.    Because of Defendant's above-described conduct, Plaintiffs and the Class Members have and will continue to suffer loss of income and other damages. Accordingly, Plaintiffs and the Class Members are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including but not limited to all damages, fees and costs available under NRS 608.005, *et seq*.

**SIXTH CAUSE OF ACTION**
**(Failure to Maintain Records of Wages Pursuant to NRS 608.115)**
**(On Behalf of the Rule 23 Nevada Class)**

82.    Plaintiffs re-allege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

83.    "Every employer shall establish and maintain records of wages for the benefit of his or her employees, showing for each pay period the following information for each employee: (a) Gross wages or salary …. (b) Deductions. (c) Net cash wage or salary. (d) … total hours employed in the pay period by noting the number of hours per day. (e) Date of payment." NRS 608.115(1). "Records of wages must be maintained for a 2-year period following the entry of information in the record." NRS 608.115(3).

84.    Defendant violated NRS 608.115 by, *inter alia*, (a) failing to keep track of the time Plaintiffs and Class Members spent performing pre-, mid-, and post-shift off-the-clock work, and (b) failing to keep records of the deductions unlawfully withheld from the paychecks of Plaintiffs and Class Members.

85.    Defendant's actions discussed above were willfully oppressive, fraudulent and malicious, entitling Plaintiffs and the Class Members to punitive damages.

86.    Because of Defendant's above-described conduct, Plaintiffs and the Class Members have and will continue to suffer loss of income and other damages. Accordingly, Plaintiffs and the Class Members are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including but not limited to all damages, fees and costs available under NRS 608.005, *et seq.*

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract)**
**(On Behalf of the Rule 23 Nevada Class)**

87.    Plaintiffs re-allege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

88.    At all times relevant herein, Defendant had an agreement with Plaintiffs and with every Class Member to pay an agreed upon hourly wage rate for all hours they worked for Defendant. Indeed, Defendant offered to pay Plaintiffs and Class Members a specific rate of pay in exchange for Plaintiffs' and Class Members' promise to perform work for Defendant.

89.    The parties' employment agreement necessarily incorporated all applicable provisions of both state and federal law, including especially the labor laws of the State of Nevada.

90.    Defendant beached its agreement with Plaintiffs and Class Members by failing to compensate them for all hours worked, namely all hours spent under the custody and control of Defendant while not actually driving a client, at the agreed upon rate of pay.

91.    Because of Defendant's breach, Plaintiffs and Class Members have suffered economic loss that includes lost wages and interest.

92.    This claim is appropriate to the extent Plaintiffs' and the Class Members' remedies under the FLSA or Nevada law are inadequate in that Defendant paid them more than the applicable minimum wage but less than 40 hours per week (*i.e.*, pure "gap time" claims).

93.    Wherefore, Plaintiffs demand for themselves and for Class Members that Defendant pay Plaintiffs and Class Members their agreed upon rate of pay for all hours worked off the clock during the relevant time period alleged herein together with attorney's fees, costs,

1   and interest as provided by law.

2   **JURY TRIAL DEMANDED**

3   Plaintiffs hereby demand a jury trial pursuant to Fed. R. Civ. P. 38.

4   **PRAYER FOR RELIEF**

5   WHEREFORE Plaintiffs, individually and on behalf of all Class Members and all others

6   similarly situated, pray for relief as follows:

7   A.   For an order conditionally certifying this action under the FLSA and providing

8   notice to all Collective members so they may participate in this lawsuit;

9   B.   For an order certifying this action as a Rule 23 class action on behalf of each of

10  the Class Members;

11  C.   For an order appointing Plaintiffs as the representatives of the FLSA Collective

12  and the Rule 23 Class and their counsel as Class Counsel;

13  D.   For damages according to proof for overtime compensation at the applicable rate

14  under federal law for all hours worked over 40 per week;

15  E.   For liquidated damages pursuant to 29 U.S.C. § 216(b);

16  F.   For damages according to proof for regular rate or minimum wage rate,

17  whichever is higher, under the Nevada Constitution, for all hours worked;

18  G.   For 30 days' wages pursuant to NRS 608.140, NRS 608.040 and NRS 608.050;

19  H.   For interest as provided by law at the maximum legal rate;

20  I.   For reasonable attorneys' fees authorized by statute;

21  J.   For costs of suit incurred herein; and

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

COLLECTIVE AND CLASS ACTION COMPLAINT

1        K.       For such other and further relief as the Court may deem just and proper.

2

3   Dated: September 11, 2018            /s/ *Don Springmeyer*

4                                 Don Springmeyer, Esq.
Nevada State Bar No. 1021

5                                 Daniel Bravo, Esq.
Nevada Bar No. 13078

6                                 **WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP**

7                                 3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120

8

9                                 **SOMMERS SCHWARTZ, P.C.**
Jason J. Thompson *(Pro hac vice to be submitted)*

10                               Rod M. Johnston *(Pro hac vice to be submitted)*
One Towne Square, Suite 1700

11                               Southfield, MI 48076

12                               *Counsel for Plaintiffs and Proposed Class
And Collective Members*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLLECTIVE AND CLASS ACTION COMPLAINT