# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ALFRED DARNELL GREENE and
CHRISTOPHER SUASAENG, individually,
and on behalf of others similarly situated,

Plaintiffs,

vs.

OMNI LIMOUSINE, INC.,

Defendant.

Case No.: 2:18-cv-01760-GMN-VCF

**ORDER**

Pending before the Court is the Motion for Conditional Collective Certification Pursuant to 29 U.S.C. § 216(b), (ECF No. 23), filed by Plaintiffs Alfred Darnell Greene and Christopher Suasaeng (collectively, "Plaintiffs"). Defendant Omni Limousine, Inc. ("Defendant") filed a Response, (ECF No. 27), and Plaintiffs filed a Reply, (ECF No. 28). For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion.

## I. BACKGROUND

This matter arises out of allegedly unpaid wages owed to Plaintiffs for their work as limousine drivers employed by Defendant. (*See* Compl. ¶¶ 1–5, ECF No. 1). Plaintiffs state that their duties, like Defendant's other limousine drivers, included tasks such as retrieving paperwork and trip sheets prior to picking up clients, inspecting vehicles for damage prior to leaving the yard, purchasing and transferring supplies to the vehicles, cleaning the vehicles, driving to pick up locations and waiting for the fare, picking up clients, helping clients unload luggage, and collecting client payments. (*Id.* ¶¶ 29–30, 32–33). However, according to Plaintiffs, Defendant's limousine drivers "are only paid the hourly wage for time spent driving the client"; "Plaintiffs and other limousine drivers are not paid for any wages at all for the time spent completing required work activities" that occur before, after, or in-between fares. (*Id.*

¶ 29). As a result, Plaintiffs claim they, and other limousine drivers, were not paid for overtime work and were subject to unlawful deductions in pay. (*Id.* ¶¶ 34–38).

Plaintiffs filed their Complaint against Defendant on September 11, 2018, on behalf of themselves and all other similarly situated employees of Defendant. (*Id.* ¶ 40). The Complaint asserts claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, various Nevada Revised Statutes, and the Nevada Constitution. (*Id.* ¶¶ 46–93). Specifically, Plaintiffs allege that Defendant: (1) failed to pay overtime in violation of 29 U.S.C. § 207; (2) failed to pay wages for all hours worked in violation of NRS 608.140 and 608.016; (3) failed to pay minimum wages in violation of the Nevada Constitution; (4) failed to timely pay all wages due and owing in violation of NRS 608.140 and 608.020–050; (5) made unlawful wage deductions in violation of NRS 608.100 and 608.110; (6) failed to maintain records of wages in violation of NRS 608.115; and (7) breached its contracts with Plaintiffs. (*Id.*).

In the instant Motion, Plaintiffs move for conditional certification of this case as a collective action pursuant to § 216(b) of the FLSA.[1] Plaintiffs propose a collective defined as:

> *All Chauffeurs/Limousine Drivers who worked for Defendant Omni Limousine, Inc. at any time on or after September 11, 2015 through the date of judgment* (the "Collective").

(Mot. Conditional Certification 1:27–28, ECF No. 23). Plaintiffs also seek entry of an order for: (1) Defendant to identify all putative members of the Collective and provide Plaintiffs with certain forms of contact information for those individuals; (2) approval of proposed Notices to the putative members about their ability to opt in as plaintiffs to this case, which would be sent by US mail, email, and text message; and (3) approval of a sixty-day opt-in period for putative members. (*Id.* 1:26–2:12).

---

[1] Plaintiffs state that they intend to bring their state law claims as a class action under Federal Rule of Civil Procedure 23. (Mot. Conditional Certification 6:4–10, ECF No. 23). However, for purposes of the instant Motion, Plaintiffs seek only conditional certification of the Collective for the FLSA claim. (*Id.* 1:23–25, 14:22–15:5); (Reply 12:23–24, ECF No. 28).

## II. LEGAL STANDARD

Section 216(b) of the FLSA provides that one or more employees may bring a collective action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). While a plaintiff may bring an action on behalf of himself and others similarly situated, "no employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought." *Id.* "Although § 216(b) does not require district courts to approve or authorize notice to potential plaintiffs, the Supreme Court held in *Hoffman-La Roche* that it is 'within the discretion of a district court' to authorize such notice." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). "[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (alteration in original) (internal quotation marks omitted). "[P]laintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." *Id.* at 1097. "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination." *Id.* (internal quotation marks omitted).

The FLSA does not define "similarly situated." However, the Ninth Circuit states that, in the collective action context of FLSA claims, "what matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114–15 (9th Cir. 2018). To determine whether a class is "similarly situated," a majority of courts have adopted a two-stage approach. *Id.*; *See Padan v. W. Bus. Sols., LLC*, No. 2:15-cv-00394-GMN-CWH, 2016 WL 304303, at *2 (D. Nev. Jan. 25, 2016); *Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 992–93 (C.D. Cal. 2008); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466

(N.D. Cal. 2004); *Pfohl v. Farmers Ins. Grp.*, No. 2:03-cv-03080-DT-RC, 2004 WL 554834, at *2 (C.D. Cal. Mar. 1, 2004). The first stage determines whether notification to potential collective members of the representative action should occur; and the second stage determines whether the members are, in fact, "similarly situated." *Leuthold*, 224 F.R.D. at 467.

"Since this first determination is generally made before the close of discovery and based on a limited amount of evidence, the court applies a fairly lenient standard and typically grants conditional class certification." *Misra*, 673 F. Supp. 2d at 993 (citing *Leuthold*, 224 F.R.D at 467; *Pfohl*, 2004 WL 554834, at *2). At this initial notice stage, "a plaintiff need only make a 'modest factual showing sufficient to demonstrate that [the putative class members] were victims of a common policy or plan that violated the law.'" *Id.* If the court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in" by a certain deadline. *Id.*

The second stage determination then occurs after discovery ends, and this stage controls whether the matter is ready for trial. *Id.* At this second stage, the court determines if the party plaintiffs share "factual or legal similarities [that] are material to the resolution of their case." *See Campbell*, 903 F.3d at 1115–16. If claimants do not share factual or legal similarities that are material, "in the sense of having the potential to advance [their] claims, collectively, to some resolution," the court decertifies the class and the opt-in plaintiffs are dismissed without prejudice. *Id.* Similarly, decertification of a collective action of otherwise similarly situated plaintiffs can occur when "the collective mechanism is truly infeasible." *Id.*

### III. DISCUSSION

Plaintiffs' instant Motion requests "nothing more than authorization to circulate a notice of the pendency of this action to other persons . . . so that they can receive notice of, and have an opportunity to exercise, their 'opt-in rights' in this FLSA litigation." (Mot. Conditional Certification 12:3–5, ECF No. 23). Accordingly, Plaintiffs argue that conditional certification

of this case should begin with the first stage, thereby requiring Plaintiffs to simply "make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law." *Lewis v. Nevada Property 1, LLC*, No. 2:12-cv-01564-MMD-GWF, 2013 WL 237098, at *7 (D. Nev. Jan. 22, 2013); *Dualan v. Jacob Transportation Servs., LLC*, 172 F. Supp. 3d 1138, 1144 (D. Nev. 2016).

Defendant does not directly dispute that the first-stage analysis should apply for conditional certification. Instead, Defendant opposes conditional certification by pointing to arbitration provisions in two Collective Bargaining Agreements ("CBAs"). (Resp. 2:5–10, 3:21–4:2, ECF No. 27). These CBAs require that all disputes over the terms and conditions of employment be submitted to arbitration, which would include claims under the FLSA and Nevada laws. (*Id.* 3:21–22); (2015 CBA at 5–6, Ex. A to Resp., ECF No. 27); (2018 CBA at 6–9, Ex. B to Resp., ECF No. 27). The CBAs purportedly bind Plaintiffs and members of the putative Collective because the CBAs were negotiated by the International Brotherhood of Teamsters Union, Local 713 ("Local 713"), of which Plaintiffs and the Collective are allegedly members. (Resp. 2:5–10, 3:21–4:2). As support for its position, Defendant cites *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), where the US Supreme Court affirmed the principle that arbitration agreements can be enforceable even when such agreements waive collective-action procedures for employees. *Epic Sys. Corp.*, 138 S. Ct. at 1624.

**A.** *Stages of Collective Action Certification*

The Court agrees with Plaintiffs that the first-stage analysis governs the present motion for certification of the FLSA action. Discovery began only recently in this case, with several months remaining. (Scheduling Order 2:18–4:2, ECF No. 21). It is therefore appropriate for the Court to apply the lenient, first-stage standard for conditional certification because the parties have not had an adequate opportunity to develop the record with detailed, factual

support for the propriety and scope of the collective action. *Dualan*, 172 F. Supp. 3d at 1145; *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015).

Further, Plaintiffs made the requisite showing that they and the proposed Collective were allegedly "victims of a common policy or plan," thereby warranting conditional certification.[2] *Misra*, 673 F. Supp. 2d at 993 (citing *Leuthold*, 224 F.R.D at 467; *Pfohl*, 2004 WL 554834, at *2); *see Thurmond v. Presidential Limousine*, No. 2:15-cv-01066-MMD-PAL, 2015 WL 4937989, at *3 (D. Nev. Aug. 19, 2015). Specifically, Plaintiffs provide declarations alleging that they, and other limousine drivers included in the Collective, routinely worked more than 40 hours per week, but were not paid overtime wages. (Decl. Alfred Darnell Greene ("Greene") ¶¶ 5–23, Ex. 3 to Mot. Conditional Certification, ECF No. 23-3); (Decl. Christopher Suasaeng ("Suasaeng") ¶¶ 5–23, Ex. 4 to Mot. Conditional Certification, ECF No. 23-4); *see Thurmond*, 2015 WL 4937989, at *3. Plaintiffs also declare that, based on their experience and personal knowledge, Defendant had a pervasive policy of failing to pay limousine drivers a regular hourly wage for work performed "before, after, and in-between fares." (Mot. Conditional Certification 18:23–26) (citing relevant potions of the Declarations from Greene and Suasaeng).

As support for those declarations, Plaintiffs offer pay stubs showing instances where they worked overtime hours during certain pay periods, but were nevertheless paid a regular hourly wage of $8.25 per hour worked. (Exs. 7–10 to Mot. Conditional Certification, ECF Nos. 23-7 to 23-10) (showing pay stubs and time sheets). Similarly, Plaintiffs provide Christopher Suasaeng's time sheet for June 2–15, 2018, with a corresponding pay stub. (June 2–15 Time Sheet and Pay Stub, Exs. 9–10 to Mot. Conditional Certification, ECF Nos. 23-9 to 23-10).

---

[2] Defendant does not directly contest whether Plaintiffs satisfied their burden at this first stage of conditional certification, and thus consents to granting Plaintiffs' Motion on this issue. *See* D. Nev. Local R. 7-2(d). Regardless, the Court addresses whether Plaintiffs satisfied their burden for conditional certification to ensure that potential members should, in fact, receive notice of the suit. *See Dualan v. Jacob Transportation Servs., LLC*, 172 F. Supp. 3d 1138, 1144 (D. Nev. 2016).

This time sheet shows that Suasaeng clocked 96.32 hours worked into Defendant's time-management system for June 2 to June 15, but the related pay stub only shows payment for 65.90 hours of work. (*Id.*). Plaintiffs then declare that other limousine drivers were similarly affected due to the same policies and procedures used by Defendant. (Decl. Greene ¶¶ 9–18, 22–23, Ex. 3 to Mot. Conditional Certification, ECF No. 23-3); (Decl. Suasaeng ¶¶ 10–18, 23–24, Ex. 4 to Mot. Conditional Certification, ECF No. 23-4)

Because Plaintiffs satisfied their modest burden at this first stage, the next issue is whether the arbitration provisions in the CBAs should nevertheless bar conditional certification. However, as courts in this circuit have consistently recognized, "[n]o district court in our circuit has denied conditional certification on the basis that some members of the proposed collective may be subject to valid and enforceable arbitration clauses. The decisions that have addressed that issue have all found that the issue of the enforceability of arbitration clauses related to the merits of the case and therefore should be dealt with in phase two." *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 424 (N.D. Cal. 2015); *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 272 (N.D. Cal. 2015) ("The initial 'notice stage' is not the appropriate time for a court to evaluate the merits of plaintiffs' FLSA claims."). Moreover, "[t]he fact that there is an arbitration agreement goes to [a defendant's] defenses, not the common policy. Thus, the enforceability of the arbitration agreements is better reserved for the step two determination, not step one." *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 969 (N.D. Cal. 2017). The weight of authority outside the Ninth Circuit similarly recognizes the issue of arbitrability as one best handled during stage two of the certification process. *See, e.g.*, *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) ("[D]efendants' proposal essentially amounts to an invitation for the Court to adjudicate the validity of the arbitration agreements. But . . . this sort of merits-based determination should not take place at

the first stage of the conditional collective action approval process."); *Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46, 59 (D.D.C. 2018).

Defendant's citation to *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), does not persuade the Court to depart from the above-mentioned authorities. First, *Epic Systems* did not decide or discuss how arbitration agreements affect conditional certification of a collective action under the FLSA. *See generally Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *see also Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 208 (D.D.C. 2018) (explaining that *Epic Systems* "does not change" the often-use approach of refusing to consider arbitration agreements at the conditional certification stage). Relatedly, Defendant has yet to file a motion to compel arbitration against Plaintiffs.[3] The Court thus is not presented with the threshold issue of arbitrability concerning Plaintiffs' claims or any of the Collective's potential claims. *See Hughes v. S.A.W. Entm't, LTD*, No. 16-CV-03371-LB, 2017 WL 6450485, at *9 (N.D. Cal. Dec. 18, 2017); *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016) ("Upon a motion to compel arbitration, a court should address the arbitrability of the plaintiff's claim at the outset of the litigation."); *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) ("Thus, after a motion to compel arbitration has been filed, the court must 'refrain from further action' until it determines arbitrability.") (citing *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)); *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005) ("[I]f defendants choose to move to compel arbitration of certain claims, the Court will consider whether the claims are arbitrable at that time."). Nor could the Court presently find that the CBAs potentially require arbitration for Plaintiffs' FLSA claims based on Defendant's filings. Defendant's attached exhibits only show that the CBAs are between Local 731 and Defendant; the exhibits do not reveal signatures by the named Plaintiffs

---

[3] Defendant states in its Response that it "will be filing in short order a motion to compel arbitration so that the claims at issue here can proceed in the proper forum." (Resp. 5:2–4, ECF No. 27). Nevertheless, in the several months between Plaintiffs' Motion for Conditional Certification and this Order, Defendant has not done so.

or any other employees, and Defendant does not provide any list of individuals who are members of Local 731. (*See generally* Exs. A–C to Resp., ECF No. 27). Indeed, Plaintiffs deny ever being members of Local 731 and deny "reading, signing or otherwise assenting to any documentation, paperwork or agreements regarding Local 713 or any other union representative." (Reply 8:10–9:12); (Decl. Greene ¶¶ 3–14, Ex. A to Reply, ECF No. 28-1); (Decl. Suasaeng ¶¶ 3–4, Ex. B to Reply, ECF No. 28-2); (Decl. Jarol Hernandez Martinez ¶¶ 3–14, Ex. B to Reply, ECF No. 28-3).[4]

Because Plaintiffs satisfied their burden at this first stage of the certification process, and because Defendant has not presently demonstrated how the CBAs defeat conditional certification, the Court grants conditional certification of the Collective. *Cf. Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018); *see Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456-PJH, 2018 WL 6727825, at *9 (N.D. Cal. Dec. 21, 2018).

### B. *Entitlement to a List of Potential Collective Members*

Plaintiffs contend that, in order to provide timely and orderly notice of this action to the Collective, the Court should order Defendant to identify all potential opt-in plaintiffs within ten days of this Order. (Mot. Conditional Certification 21:22–22:1). Plaintiffs request that Defendant produce a list with each person's full name, last known address, dates of employment, telephone numbers, and email addresses in electronic and importable format. (*Id.*)

Defendant does not contest whether Plaintiffs are entitled to a list of potential opt-in plaintiffs, which constitutes consent to granting Plaintiffs' Motion on this issue. *See* D. Nev. Local R. 7-2(d). Regardless, courts in this District routinely order defendants to provide a list

---

[4] Nothing in this Order should be construed as affecting Defendant's ability to seek dismissal of Plaintiffs' or the Collective's claims prior to the second-stage inquiry. Likewise, the Court's conditional certification of the Collective should not be construed as making any determination about the enforceability of the arbitration provisions in the CBAs against Plaintiffs or any members of the Collective.

of potential opt-in members in the form sought by Plaintiffs here. *See, e.g.*, *Dualan v. Jacob Transportation Servs., LLC*, 172 F. Supp. 3d 1138, 1152 (D. Nev. 2016) (ordering the defendant to "provide plaintiffs' counsel with the names and last-known addresses for all employees covered by the collective action within 60 days and in Microsoft Excel or compatible electronic format"); *Desio v. Russell Rd. Food and Bev., LLC*, No. 2:15-cv-01440-GMN-CWH, 2017 WL 4349220, at *5 (D. Nev. Sept. 29, 2017) (requiring "Defendant to provide Plaintiff with the names, last-known addresses, and telephone numbers for all dancers for the last three years."). The Court accordingly orders Defendant to provide Plaintiffs' counsel with a list of potential opt-in plaintiffs including each person's full name, last known address, dates of employment, telephone numbers, and email addresses in an electronic and importable format. Defendant shall have ten days from the date of this Order to provide that information to Plaintiffs' counsel, though Defendant may seek an extension for good cause.

### C. *Form of the Collective-Action Notice*

Because the Court approves conditional certification, the next issue is the content of the proposed Notices that Plaintiffs will send to the Collective. With such notices, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann–La Roche*, 493 U.S. at 174. For example, a statement indicating that the Court authorized the notice to be distributed creates the appearance of judicial endorsement of this action instead of just the form of the notice and the persons eligible to receive it. *See Clark v. Bank of Am., N.A.*, No. 2:16-cv-02228-GMN-VCF, 2019 WL 1442161, at *4 (D. Nev. Mar. 31, 2019).

Plaintiffs provide a proposed Notice to the Collective in Exhibit A to the Motion for Conditional Certification, (ECF No. 23-1). The proposed Notice properly accomplishes the following: states that the Court "has taken no position regarding the merits of Plaintiffs' claims, and there is no assurance that the Court will grant any relief"; identifies the arrangement for

Plaintiffs' attorney's fees by plainly stating how attorney's fees are subject to the Court's final approval and the contingency-fee percentage that may be paid to Plaintiffs' counsel in the event of a favorable judgment; contains a provision informing potential opt-in plaintiffs that individuals may be required to participate in written discovery, appear for depositions under oath, produce documents, and/or testify at a hearing or in trial; and explains to potential opt-in plaintiffs that they may seek independent counsel of their own choice for representation. *Cf. Dualan*, 172 F. Supp. 3d at 1151 (requiring the Notice to identify "the percentage fee that plaintiffs agreed to pay their counsel and how the agreement provides that fee will be calculated"); *Thurmond*, 2015 WL 4937989, at *4; (Notice of Collective Action, Ex. A to Mot. Conditional Certification, ECF No. 23-1).

The Court has one concern, however, with the proposed Notice to the Collective: it does not discuss potential issues concerning how arbitration agreements may potentially affect opt-in plaintiffs. That said, Plaintiffs anticipated this concern, and noted their willingness to modify the proposed Notices so that potential opt-in plaintiffs can "understand the arbitration issue before deciding whether or not to opt in to the collective action." (Reply 5:9–12, ECF No. 28). Plaintiffs accordingly suggest that "the parties can add a provision to the proposed FLSA notice succinctly explaining the subject of arbitration and the parties' respective contentions regarding it." (*Id.*). The Court agrees with Plaintiffs' proposal—adding a provision about arbitration would assist potential opt-in plaintiffs to make an informed decision about joining this case. The parties shall have fourteen days from the date of this Order to meet, confer, and resubmit the proposed Notice for the Court's approval.

**D. *Methods of Distributing the Collective-Action Notice***

Plaintiffs request permission to send Court-approved Notices of the collective action through US mail, email, and text message. (Mot. Conditional Certification 2:4–5). Defendant offers no opinion about these proposed methods of distribution. (*See generally* Resp., ECF No.

27). As the Court has done in other cases, Plaintiffs are permitted to distribute the Notices through US mail, email, and text message. *See Desio*, 2017 WL 4349220, at *5. Similarly, the Court grants Plaintiffs' request for permission to send one reminder email thirty days into the opt-in period to putative Collective members who, at that point, have not yet opted into the action. (Mot. Conditional Certification 2:6–7).

### E. *Deadline to Notify the Collective*

When an FLSA collective action is conditionally certified, a district court "may set a deadline for plaintiffs to join the suit by filing consents to sue." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Hoffmann–La Roche Inc.*, 493 U.S. at 169–72. Here, Plaintiffs request a sixty-day opt-in period. Courts in this circuit routinely approve a sixty to ninety-day period for potential opt-in plaintiffs to join the case. *See Clark v. Bank of Am., N.A.*, No. 2:16-cv-02228-GMN-VCF, 2019 WL 1442161, at *5 (D. Nev. Mar. 31, 2019) (finding a sixty-day opt-in period to be reasonable); *Dualan*, 172 F. Supp. 3d at 1151. Because Plaintiffs' requested opt-in period is reasonable, the Court grants a sixty-day deadline for plaintiffs to join through written consent. The opt-in period will begin on the date that the Notice of the Collective Action is distributed through the methods permitted in this Order.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Conditional Collective Certification Pursuant to 29 U.S.C. § 216(b), (ECF No. 23), is **GRANTED in part** and **DENIED in part**. Specifically, the Court grants conditional certification of the proposed Collective under 29 U.S.C. § 216(b). Defendant shall have ten (10) days to provide Plaintiffs' counsel with a list of each potential opt-in plaintiff, which must include each person's full name, last known address, dates of employment, telephone number, and email address. The Court denies Plaintiffs' proposed Notice to the Collective. The parties must meet, confer, and add a provision to the proposed Notice that concisely explains the subject of arbitration and the

parties' respective contentions regarding it. The parties then must resubmit the proposed Notice to the Court within fourteen (14) days from the date of this Order for approval. Once Plaintiffs resubmit the proposed Notice and receive the Court's approval, Plaintiffs' counsel may distribute the Notice to the Collective via US mail, email, and text message. The potential opt-in plaintiffs shall have sixty (60) days from the date of mailing of the Notice and Consent to Join Lawsuit forms to opt into this case through written consent. The Court grants Plaintiffs' request for permission to send one reminder email thirty days into the opt-in period to putative Collective members who, at that point, have not yet opted into the action.

**DATED** this __15__ day of June, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court